RECEIVED

APR 2 3 2025

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

John Xavier George Anaya aka John Maldonado aka Wolfgang Vanhalen
PO Box 203
Petersburg Virginia 23803
707-210-7219

John Xavier George Anaya, IN PRO PER

Case: 1:25-cv-01253
Assigned To : Unassigned
Assign. Date : 4/23/2025
Description: Pro Se Gen. Civ. (F-DECK)

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

John Xavier George Anaya, aka John
Maldonado aka Wolfgang Vanhalen
        Plaintiff,

    vs.

Department of Justice,
        Defendant.

No.  Case Number

REQUEST FOR DOJ TO INVESTIGATE NAPA
COUNTY FOR RETALIATION AGAINST
CONFIDENTIAL HUMAN SOURCE
INJUNCTIVE RELIEF AND AMICUS CURIAE
QUI TAM INVESTIGATION

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF COLUMBIA

## Plaintiff (CHS)

v.

## U.S. DEPARTMENT OF JUSTICE

Case No.: _____

### I. Jurisdiction

1

- **28 U.S.C. § 1361** (Mandamus Act)

- **28 U.S.C. § 1331** (Federal Question)

- **5 U.S.C. § 706(1)** (APA unreasonable delay claim)1.

## II. Legal Duties Violated

1. **DOJ's failure to enforce confidentiality protections** under its own

Guidelines2.

2. **Failure to prevent retaliation** by Napa County, violating **18 U.S.C. § 1513(e)** and Privacy Act safeguards3.

3. **Unreasonable delay** in addressing CHS safety concerns, violating APA § 555(b)1.

## III. Requested Relief

- **Compel DOJ to intervene** and protect the CHS from retaliation.

- **Order DOJ to investigate** Napa County's actions to include Jessica Marie Lopez Anaya, Veronica Piper Jefferson, Alexus Vosmeyer, Robert Stamps, Joseph Solga, Cristen Briceno Mark Boessenecker, Kendal Barron, Lauren Noga, Allison Hayley, Alfredo Larranaga's and the individual not employed by Napa County.

Gregory C Winter Attorney at Law

- **Enjoin further disclosures** of CHS identity.

- **Amicus Curiae for the Plaintiff**

- **Injunctive Relief From Malicious Conduct of Napa County to include Allison Hayley, direct reports, Judicial Officers, County Administration, CWS, to include Jessica Marie Lopez Anaya and Gregory C Winter, Sheryl Bratton, Lauren Noga, Cristene Briseno, Robert Stamps, Joseph Solga, Alfredo Larranaga, Bekci Craig, Kendall Barron, Mark Boessenecker, and Elia Ortiz**
   - **Initiate Whistleblower protection for Plaintiff**
- **Enforce Existing Order in place that forbids travel in to the areas of operation Mexico, and expand to San Diego.**
   - 

## Legal Basis for Mandamus Action

A writ of mandamus under **28 U.S.C. § 1361** requires:

1. **Clear right to relief**: The CHS has a right to protection under federal guidelines.
2. **Clear, nondiscretionary duty**: The DOJ has explicit obligations to safeguard CHS identities and prevent retaliation.
3. **No adequate alternative remedy**: No other judicial or administrative recourse exists to compel DOJ action1.

## DOJ Duties to Protect CHS

### 1. Attorney General's Guidelines on FBI Confidential Human Sources

The **DOJ must maintain confidentiality** of CHS identities unless disclosure is required by court order or law2.

**Prohibition on retaliation**: The Guidelines mandate that DOJ personnel secure CHS-related materials and prevent unauthorized disclosures that could lead to retaliation2.

**Security obligations**: DOJ must protect CHS information from unauthorized access or misuse2.

## 2. Privacy Act of 1974 & DHS Fair Information Practice Principles (FIPPs)

The **Privacy Act** prohibits unauthorized disclosure of personally identifiable information (PII), including CHS data3.

**FIPPs** require **data minimization**, **use limitation**, and **security safeguards** to prevent harm to individuals3.

## 3. Prohibition on Retaliation (Federal Law)

**18 U.S.C. § 1513(e)**: Criminalizes retaliation against witnesses, informants, or victims.

**DOJ policies** explicitly forbid actions that expose CHS to harm, including intimidation or retaliation by local entities2.

- False Claims Act (FCA), 31 U.S.C. §§ 3729 - 3733

## Supporting Case Law

- **Lovitky v. Trump, 949 F.3d 753 (D.C. Cir. 2020)**: Clarifies mandamus elements1.

  **Am. Hospital Ass'n v. Burwell, 812 F.3d 183 (D.C. Cir. 2016)**: Reinforces nondiscretionary duty requirement1.

This action argues that the DOJ's inaction violates **mandatory duties** under federal law and justifies mandamus relief.

Citations:1 Mandamus and APA Delay Cases (American Immigration Council)1.2 DOJ Guidelines on FBI Confidential Human Sources2.3 USCIS Privacy Act and FIPPs3.

Wisconsin Bell, Inc. v. United States ex rel. Heath, **No. 23-1127**,

## CBP Protections for Informants (Including FOIA Exemptions)

### 1. Confidentiality Under 19 CFR § 161.15

DOCUMENT TITLE (e.g., COMPLAINT FOR DAMAGES)

**Mandatory Confidentiality**: The **name, address, and identifying details** of informants must be kept confidential to prevent unauthorized disclosure.

**FOIA Exemption**: Under **5 U.S.C. § 552(b)(7)(D)**, records that could reveal a **confidential source** (including state/local informants) are categorically exempt from FOIA disclosure.

- **Non-Disclosure of Identifying Information**: No files aiding in informant identification may be released.

## 2. Privacy Act & Trade Secrets Act Safeguards (19 CFR § 182.2)

**Personally Identifiable Information (PII)**: Protected under **5 U.S.C. § 552a (Privacy Act)** and **18 U.S.C. § 1905 (Trade Secrets Act)**.

- **Limited Disclosure**: Confidential information may only be shared for law enforcement or customs administration purposes.

## 3. CBP Directives on PII Protection

- **CBP Directive 2120-010A** mandates strict controls over PII, including informant data.

**Public Affairs Restrictions (Directive 1450-027)**: Prohibits disclosing PII in external communications unless legally required.

## 4. FOIA Exemptions Specific to Informants

**Exemption (b)(7)(D)**: Shields records that could expose confidential sources in criminal or national security investigations.

**Exemption (b)(6)**: Protects personal privacy interests, preventing disclosure that would constitute an **unwarranted invasion of privacy**.

## 5. Enforcement & Accountability

- 

## CBP Protections for Informant Confidentiality

### 1. Legal & Regulatory Framework

**19 CFR § 161.15**: Mandates strict confidentiality for informant identities and prohibits unauthorized disclosure unless required by law.

- **Privacy Act (5 U.S.C. § 552a)**: Restricts sharing of personally identifiable information (PII) without consent, with exemptions for law enforcement.

**FOIA Exemptions (5 U.S.C. § 552(b)(7)(D))**: Shields records that could reveal confidential sources in criminal or national security investigations.

### 2. Operational Safeguards

- **Encryption & Access Controls**:

CBP requires encryption for electronic PII (e.g., password-protected email attachments) and stores physical records in locked cabinets.

**CBP Directive 2120-010A** enforces PII handling protocols, including need-to-know access.

**Third-Agency Rule**: Prohibits further dissemination of informant data without approval from the originating agency.

## 3. Privacy Compliance Mechanisms

**Privacy Impact Assessments (PIAs)**: Evaluate risks in new programs involving PII.

**Systems of Records Notices (SORNs)**: Define how informant data is collected, used, and protected under **DHS/CBP-013** (Investigative Records System).

## 4. Accountability & Oversight

**Office of Professional Responsibility (OPR)**: Investigates privacy violations, though past audits (e.g., **OIG-16-123**) revealed lapses in documentation and encryption.

**Privacy Division**: Monitors compliance with **Fair Information Practice Principles (FIPPs)**, including data minimization and security audits.

IIISTORY

I humbly ask that the DC Circuit Court intercede on my behalf in the exceptional matter that is at hand.

1) I am a former Confidential Human Source for a myriad of agencies. I deactivated in 2010. I volunteered for this duty to prove valor and compliment the sacrifices of my brothers dying in the theatre. I personally knew the victims, and their families.

2) As a result, I may be targeted for retaliation by the criminal elements to include the Mexican Mafia and associates, as well as Cartels, Foreign Terrorist Groups. Additionally my Son and or family may be subjected to targeting.

3) I have insider information related to the practices of Napa County to include Child Welfare Services, N.E.W.S., A 100 Men that Give a Damn, and other Non-Profits, as well as law enforcement. They have been working in tandem to manipulate funding from grants by abusing the machinery of justice to maintain funding of grants, and extorting money out of victims by erroneous and malicious acts. They stack the jury with people connected to the Non Profits to ensure guilty verdicts that benefit

the funding through grants. They are then ordering participation in the programs that are supposed to be voluntary under the grants, and ordering money paid to the non-profits as well. Anyone that speaks out about the concerns is immediately targeted by those involved and that profit. My spouse if a former employee of N.E.W.S, she with other employees like Helen Pelayo Rodriquez the wife of a validated associate of the Mexican Mafia and tied to the Northern Mafia Nortenos use their connections to instill fear in anyone that may come forward. N.E.W.S hires then go on to work for County agencies like the DA office, Child Welfare Services etc. When I went to them, they then buried the information, and retaliated against me. The parties listed are using the CHS history as a weapon against me to silence and place me in danger.

4) Attorney Gregory C Winter has been working in tandem with the individual to extract information that could be used to my life being targeted. He demanded operational information, and the names or targets. This was done in the presence of witnesses in Maryland and Virginia, as well as a myriad of places across the nation that appeared via zoom.

5) I asked for local law enforcement to help, and I went to the agencies. The County Officials Responsible have in response preferred erroneous action

under penalty of perjury to further harm me and seek to silence me. They

have targeted my Constitutional Rights, Title II ADA rights, and

protections as a CHS. They intentionally made confidential information

public. This has been done with the help of the arbiters.

6)  In the matters active in the County of Napa, I have been intentionally

targeted for retaliation and exposure by the very persons responsible with

protecting a person with this identification. The County of Napa is

engaged in a complex conspiracy to cover the truth about one of their

employee's criminal history. Jessica Marie Lopez Anaya aka Jessica

Marie Lopez is a Napa County Employee. She is a former case manager

for a halfway house in San Diego that housed Federal Inmates. She was a

case manager and began an unsanctioned relationship with Marvin Lee

Mace Jr. an inmate on her caseload. He is a known gang member from

Vista Homeboys and a known Mexican Mafia and Cartel Loyalist. She

hid this from her employers throughout her employment with them. She

was arrested for DUI, and informed her employers, but kept her

relationship hidden. She then was arrested for a second DUI where she

then quit her employment as a case manager and went into the drug trade

with Marvin Lee Mace. She was used to walked into Mexico to fill herself

up with Heroin and walk it into the United State by using ports of entry

for the Cartel. She was eventually arrested with Marvin Lee Mace in

Vista Ca when he shot himself and she called for EMS. Law enforcement

show up and they were both arrested for a myriad of crimes. When

released from custody, then Jessica Marie Lopez filed for a confidential

marriage with the County of San Diego. She was his case manager, so she

knew he was married to his co-defendant and wife Jovanna Mace (see

news paper article) Both Jovanna and Marvin were arrested together for

attempting to sell larger quantities of Meth and Heroin to undercover

DEA agents with children in Vista.  Marvin Mace was sentenced to 5

years for his crimes. He was released, but violated for domestic violence,

and a new case for possession of Heroin with intent to sale. He is

currently in custody for more recent criminal activity, case number He is

currently in custody and being prosecuted by the United States

Department of Justice presently.

Napa County HR Director Cristene Briseno did not conduct a proper background

check and when she was tasked with an investigation in to her direct reports she

scuttled the inquiry. There was a directive by Alfredo Pedroza (DOJ Investigation

DOCUMENT TITLE (e.g., COMPLAINT FOR DAMAGES)

Subject) and his direct report Ximen Espinosa directed me in writing to submit any

further evidence to Cristene Briseno. She refused to reach out or accept any evidence

that my Son was in imminent danger, and that her direct report Alexysus Vosmeyer,

and Veronica Piper Jefferson deviate from their mandate. Video evidence is available

to support this as well as emails. The CHS begged them for help to protect his Son

from being taken in to the area of operations BAJA MEXICO and Tijuana, and

Frontera of Mexico, and San Diego. When the liability was evident, they worked

together to cover up by committing fraud with the help of Sheryl Bratton by making a

request of r a Civil Restraining Order by way of Perjury. Robert Stamps who undid the

crime between Marvin Mace Jr and Jessica Marie Lopez sought to validate the false

allegations under the premise of a credible threat that was manufactured. When that

failed and the CHS came to DC to ask for DOJ oversight he was struck by a drunk

driver while parked in a handicap parking space in Crystal City. I made a video

expressing his intent to press forward with an inquiry, and that day 22, Aug, 2024

Allison Hayley filed an erroneous action against the CHS as yet another means to try

to harm and or silence the truth of their inaction. CHS filed official complaint with FBI

and asked for oversight, and made an official request to his Congressman to prefer a

situation report on his behalf. The CHS has begged repeatedly for protections, and for

measures to maintain confidentiality, to no avail as Napa County officials, Gregory

Winter and Jessica Marie Lopez Anaya have worked together to extract potentially

lethal information to be shared with Jessica Marie Lopez Anaya's criminal contacts as

she threatened to do at the outset of the proceedings.

This was done in the presence of witnesses from across the Country. Some of which

are in the Commonwealth, and Maryland to appear for testimony should it please the

Court. The names of targets for which the CHS operated against were demanded in

open court by Gregory C Winter. The CHS begged to go in camera, as he needed to

maintain confidentiality for safety. The intent of Gregory C Winter and Jessica Marie

Lopez was to use the threat of placing his Son in danger or him relaying the names to

protect his son. This would allow her to relay to her associates that are directly

connected to the organized crime groups responsible for the kidnappings and murders.

To retaliate against the CHS Joseph Solga and other Napa County Officials have

targeted his parental rights, freedom, home, assets, and placed his life in danger. There

is video evidence of said conduct should it please the court. This has been shared with

investigators. The County of Napa has placed his son with known associates of the

same gangs, mafia, and cartel associates. They have preferred frivolous action against

me and denied his ADA rights, Constitutional Rights, and safety protections as a CHS.

The CHS begged for help to relay to the court without exposing their history of assisting law enforcement. CHS went to Napa PD, Napa Sheriff, FBI, San Diego PD, Congressman, DOJ, DEA, Child Welfare Services, Napa Court Admin, Napa County Admin, Legal Aid, State Bar, Commission for Judicial Performance, OIG, Governor's Office, CA Attorney General, and no relief was granted, or offered. AN order is in Place that keeps his Son out of the area of operations, but that order is under threat. Napa County has used their duties to instead harm the CHS to cover their own actions. In doing so they have placed him in a paradox of danger, and severed his child from him and bankrupted him in an attempt to cover their actions. Their retaliation is Comprehensive to include financial. The actions are overt and criminal under the color of law. I pray that the Court grants me injunctive relief and protections that I have sought from the outset, and for the DOJ to hold those responsible for this conduct accountable. My action is in no way intended to cast a bad light on the DOJ. I am grateful for all they do for our Country. The County of Napa is doing everything it can to hide the False Claims Act Violations, as well as their reliance on County employees that have criminal history that they use to carry out the Qui Tam Violations. Rights are being violated to increase funds through non profits in the County of Napa. My parental rights were targeted as was Wendel Coleman's when he came forward with

this information. This is achieved by first targeting their parental rights, by erroneous

civil action, or criminal. They utilize the public defenders office, and abuse the PC

1368 Declaring of doubt if the individual continues to assert their rights. This is all

done under the color of law with overt acts of more than 2 individuals. We have video,

email evidence should it please the court.

Mandamus is an extraordinary remedy, which should only be used in exceptional

circumstances of peculiar emergency or public importance. LaBuy v. Howes Leather

Co., 352 U.S. 249 (1957); United States v. McGarr, 461 F.2d 1 (7th Cir. 1972). The

All Writs Act, 28 U.S.C. § 1651(a), confers the power of mandamus on federal

appellate courts. LaBuy v. Howes Leather Co., supra. Mandamus may be appropriately

issued to confine an inferior court to a lawful exercise of prescribed jurisdiction, or

when there is an usurpation of judicial power. See Schlagenhauf v. Holder, 379 U.S.

104 (1964). Mandamus may be employed to require a lower court to enforce the

judgment of an appellate court, or to keep such a court from interposing unauthorized

obstructions to the enforcement of the judgment of a higher court. See United States v.

District Court, 334 U.S. 258, 263 (1948) (to enforce obedience to court of appeals mandate). Where the right was clear and indisputable, mandamus issued to compel a lower court to release a boat under an assertion of the immunity of a foreign sovereign. Spacil v. Crowe, 489 F.2d 614 (5th Cir. 1974). It has been utilized to compel the issuance of a bench warrant. Ex parte United States, 287 U.S. 241, 248 (1932).

The district courts have no jurisdiction of a suit seeking mandamus against the United States. United States v. Jones, 131 U.S. 1 (1889); Minnesota v. United States, 305 U.S. 382 (1939); McCune v. United States, 374 F. Supp. 946 (S.D.N.Y. 1974). 28 U.S.C. § 1361, giving the United States district court jurisdiction of "an action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff," speaks only of compelling an officer or employee. The committee reports accompanying this enactment make clear that the legislation did not create new liabilities or new causes of action against the United States. See S.Rep. No. 1992, 87th Cong., 2d Sess. 2; H.Rep. No. 536, 87th Cong., 2d Sess. 1.

Courts have no authority to grant relief in the nature of mandamus if the plaintiff has an adequate legal remedy aside from mandamus, such as a suit for monetary judgment or the opportunity to raise the legal issues involved in a suit brought by the government. United States ex rel. Girard Trust Co. v. Helvering, 301 U.S. 540, 544

(1937); Spielman Motor Co. v. Dodge, 295 U.S. 89 (1935); Whittier v. Emmet, 281

F.2d 24, 28-29 (D.C. Cir. 1960); Nixon v. Sirica, 487 F.2d 700 (D.C. Cir. 1973);

Lovallo v. Froehlke, 468 F.2d 340 (2d Cir. 1972), cert. denied, 411 U.S. 918 (1973).

Mandamus is not available, if a statutory method of review is authorized. Wellens v.

Dillon, 302 F.2d 442 (9th Cir.), app. dism., 371 U.S. 90 (1962). Mandamus does not

supersede other remedies; it only comes into play when there is a want of such

remedies. See Carter v. Seamans, 411 F.2d 767 (5th Cir. 1969), cert. denied, 397 U.S.

941 (1970).

The power of a district court to compel official action by mandatory order is limited to

the enforcement of nondiscretionary, plainly defined, and purely ministerial duties. See

Decatur v. Paulding, 39 U.S. (1 Pet.) 496, 514-17 (1840); Work v. Rives, 267 U.S.

175, 177 (1925); Wilbur v. United States, 281 U.S. 206, 218 (1930). An official action

is not ministerial unless "the duty in a particular situation is so plainly prescribed as to

be free from doubt and equivalent to a positive command." Wilbur v. United States,

supra; See United States ex rel. McLennan v. Wilbur, 283 U.S. 414, 420 (1931); ICC

v. New York, N.H. & H.R. Co., 287 U.S. 178, 204 (1932); United States ex rel. Girard

Trust Co. v. Helvering, supra; Will v. United States, 389 U.S. 90 (1967); Donnelly v.

Parker, 486 F.2d 402 (D.C. Cir. 1973). "But where there is discretion . . . even though

its conclusion be disputable, it is impregnable to mandamus." United States ex rel.

Alaska Smokeless Coal Co. v. Lane, 250 U.S. 549, 555 (1919).

DOCUMENT TITLE (e.g., COMPLAINT FOR DAMAGES)

1

2

3

4

5

6

7

8

9  Date: 04/16/2025

10  Your signature

11  John Xavier George Anaya, aka John Xavier George

12  Maldonado, aka Wolfgang Vanhalen

13  IN PRO PER

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DOCUMENT TITLE (e.g., COMPLAINT FOR DAMAGES)