**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| JOHN XAVIER GEORGE ANAYA, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 25-1253 (RC) |
| | : | | |
| v. | : | Re Document No.: | 34, 45 |
| | : | | |
| DEPARTMENT OF JUSTICE, *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

## MEMORANDUM OPINION

### GRANTING DEFENDANT'S MOTION TO DISMISS; DENYING PLAINTIFF'S MOTION FOR LEAVE TO AMEND COMPLAINT

## I. INTRODUCTION

Plaintiff John Xavier George Anaya ("Mr. Anaya"), proceeding *pro se*, filed suit against the Department of Justice ("DOJ") under the Mandamus Act and the Administrative Procedure Act ("APA"). Compl. at 2, ECF No. 1. Mr. Anaya seeks to compel the DOJ, and its constituent agencies, to investigate and prosecute officials, judges, and employees from Napa County, California for purported unlawful disclosure of his identity as a Confidential Human Source ("CHS"), and for purported retaliation after he came forward with allegations of widespread corruption across the county. *Id.* at 15–16. Mr. Anaya then filed an Amended Complaint, which the Court construes as a motion seeking leave to amend, alleging that the DOJ had also failed to enforce a number of federal criminal statutes. Am. Compl. at 1, ECF No. 34. The DOJ moves to dismiss Mr. Anaya's original Complaint, arguing that the Court lacks subject-matter jurisdiction because Mr. Anaya has failed to establish an entitlement to mandamus relief, or in the alternative, that Mr. Anaya has failed to state a cognizable claim under the APA, or any other statute in his complaint. Def.'s Mot. Dismiss at 5–6, ECF No. 45.

The Court agrees. First, Mr. Anaya has failed to establish that the Government owes him a clear duty to act, both under the Mandamus Act and the APA, and therefore such claims must be dismissed. Second, even though the Court construes Mr. Anaya's filing of his Amended Complaint as seeking leave to amend under Federal Rule of Civil Procedure 15(a)(2), it, too, must be dismissed, as it is futile.

## II. BACKGROUND

Mr. Anaya claims to be a former CHS. Compl. at 9. He claims to have provided information for a number of federal agencies before being deactivated in 2010. *Id.* Mr. Anaya believes his past activities as a CHS put him in a uniquely vulnerable position, open to retaliation by criminal groups. *Id.* Mr. Anaya contends that his spouse, along with government agencies and non-profits in Napa County, conspired to suppress his complaints of corruption within the county and then retaliated against him. *Id.* at 9–11. Mr. Anaya's complaints of impropriety include the hiring of his wife, Jessica Marie Lopez Anaya, a former case manager for a halfway house in San Diego, who he alleges has close ties with criminal groups in California and Mexico. *Id.* at 11–12. He alleges that county officials have willfully ignored Mrs. Lopez Anaya's criminal associations and conspired to expose his identity as a CHS, placing him in danger, and depriving him of custody of his son. *Id.* at 14–15.

Mr. Anaya's Complaint expresses his frustration with the lack of investigative and prosecutorial work done on the part of local and federal law enforcement. *Id.* at 15. He asks this Court to compel the DOJ to enforce certain federal statutes (i.e., the Privacy Act, the False Claims Act, and 18 U.S.C. § 1513) under the Mandamus Act and the APA. Compl. at 1–2; Am. Compl. at 1. In his Amended Complaint, Mr. Anaya also seeks that the DOJ enforce alleged violations of numerous other federal criminal statutes. Am. Compl. at 1.

He filed various miscellaneous motions with this Court after the original filing of his complaint in April 2025.[1] Thereafter, in April 2026, the DOJ filed a motion to dismiss, claiming the Court lacked subject matter jurisdiction under the Mandamus Act or the federal-question statute, or alternatively, that Mr. Anaya failed to state a claim under the APA. Def.'s Mot. Dismiss at 5–6. The motion is now ripe for this Court's consideration.

## III. LEGAL STANDARD

### A. Rule 12(b)(1)

On a motion to dismiss under Rule 12(b)(1), the plaintiff "bears the burden of establishing that the court has subject-matter jurisdiction." *Gammill v. United States Dep't of Educ.*, 989 F. Supp. 2d 118, 120 (D.D.C. 2013). "In evaluating subject matter jurisdiction, the Court may consider materials outside the pleadings but must accept all of the factual allegations in the complaint as true." *Turboven Co. v. Smith*, 811 F. Supp. 3d 176, 180 (D.D.C. 2025) (citation modified).

### B. Rule 12(b)(6)

A complaint may also be dismissed for failure to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The alleged factual statements are presumed to be true. *See Atherton v. D.C. Office of Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009). To survive a motion to dismiss, the complaint must contain sufficient factual matter, accepted as true, to state a claim

[1] *See* Pl.'s Mot. for Declaratory J., ECF No. 12 (withdrawn); Pl.'s Mot. to Seal Case, ECF No. 15; Pl.'s Mot. for TRO, ECF No. 16; Pl.'s Mot. for Inj., ECF No. 17; Pl.'s Mot. to Seal Case, ECF No. 18; Pl.'s Mot. for Misc. Relief, ECF No. 23; Pl.'s Mot. for Misc. Relief, ECF No. 24; Pl.'s Mot. to Withdraw, ECF No. 28; Pl.'s Mot. for Leave to File, ECF No. 29; Pl.'s Mot. to Take Judicial Notice, ECF No. 30; Pl.'s Mot. to Consolidate Cases, ECF No. 35; Pl.'s Mot. to Take Judicial Notice, ECF No. 38; Pl.'s Mot. for Inj., ECF No. 40; Pl.'s Mot. for TRO, ECF No. 42; Pl.'s Mot. to Take Judicial Notice, ECF No. 52; Pl.'s Mot. Leave to File, ECF No. 53; Pl.'s Mot. for Order, ECF No. 61.

that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads factual content that "allow[s] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Hurd v. D.C., Gov't*, 864 F.3d 671, 678 (D.C. Cir. 2017) (quoting *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1129 (D.C. Cir. 2015)). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Williams v. Wilkie*, 320 F. Supp. 3d 191, 196 (D.D.C. 2018) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

## IV. ANALYSIS

### A. Mr. Anaya's Complaint

Mr. Anaya brings this action under the Mandamus Act and the APA to compel the Government to investigate and prosecute local officials, judges, prosecutors, and law enforcement in Napa County, California. Compl. at 14–15. He claims to be a former CHS, alleging that Napa County personnel have retaliated against him, and that the federal Government has failed to intervene and prevent this purported retaliation. *Id.* at 2, 9–10. Similarly, he asserts that the Government has delayed in "addressing CHS safety concerns" in violation of the APA. *Id.* at 2. The Government, on the other hand, asserts that the Complaint should be dismissed for lack of jurisdiction because Mr. Anaya fails to establish the threshold requirements for mandamus relief, or, in the alternative, that his APA claim should be dismissed for failure to state a claim because he has not alleged that the Government has a clear duty to act. Def.'s Mot. Dismiss at 5–6. The Court agrees. Because government agencies have broad prosecutorial discretion, Mr. Anaya has failed to establish that the Government owes him a clear duty to enforce certain federal statutes, investigate alleged violations thereof, and prosecute any

violations found, thereby failing one of the threshold requirements for mandamus relief. Mr. Anaya's APA claim fails for the same reason.

1. Mr. Anaya's Mandamus Claim

First, Mr. Anaya has not shown an entitlement to the writ of mandamus. The Mandamus Act allows district courts to entertain suits seeking to compel an officer or employee of the United States, or any of its agencies, to perform a duty owed to the plaintiff. 28 U.S.C. § 1361. A district court may grant mandamus relief if "(1) the plaintiff has a clear right to relief; (2) the defendant has a clear duty to act; and (3) there is no adequate remedy available to the plaintiff." *In re Medicare Reimbursement Litig.*, 414 F.3d 7, 10 (D.C. Cir. 2005) (citation modified). "These three threshold requirements are jurisdictional; unless all are met, a court must dismiss the case for lack of jurisdiction." *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 189 (D.C. Cir. 2016). "Even when the legal requirements for mandamus jurisdiction have been satisfied, however, a court may grant relief only when it finds compelling equitable grounds." *Id.* (quoting *In Re Medicare Reimbursement Litig.*, 414 F.3d at 10).

Here, Mr. Anaya has not shown that the Government owes him a "clear and certain duty to act." *West v. Jackson*, 538 F. Supp. 2d 12, 22 (D.D.C. 2008) (citing *N. States Power Co. v. U.S. Dep't of Energy*, 128 F.3d 754, 758 (D.C. Cir. 1997). "Mandamus is only available where 'the duty to be performed is ministerial and the obligation to act peremptory and clearly defined.'" *Id*. (quoting *13th Reg'l Corp. v. U.S. Dep't of the Interior*, 654 F.2d 758, 760 (D.C. Cir. 1980)). "A ministerial duty is one that admits of no discretion, so that the official in question has no authority to determine whether to perform the duty." *Swan v. Clinton*, 100 F.3d 973, 977 (D.C. Cir. 1996). And there is a presumption that an agency's refusal to take enforcement steps is discretionary and not reviewable by the judiciary. *Heckler v. Chaney*, 470 U.S. 821, 831 (1985);

*see also Kidwell v. F.B.I.*, 813 F. Supp. 2d 21, 28 (D.D.C. 2011) (dismissing plaintiffs' Mandamus claim against the FBI and DOJ because the agencies' decisions not to investigate or prosecute alleged crimes were committed to their discretion). That presumption can be rebutted, however, "where the substantive statute has provided guidelines for the agency to follow in exercising its enforcement powers." *Chaney*, 470 U.S at 833.

Mr. Anaya appears to argue that, under the Privacy Act, the False Claims Act, and 18 U.S.C. § 1513(e), the Government has an obligation to safeguard CHS-related information from disclosure by third parties and to prevent third-party retaliation against CHSs.[2] *See* Compl. 2–4. None of these statutes, however, place a clear duty on the Government to do so.

*a. Privacy Act*[3]

The Privacy Act, 5 U.S.C. § 552a, "regulate[s] the collection, maintenance, use, and dissemination of information," maintained by federal agencies. *Doe v. Chao*, 540 U.S. 614, 618 (2004). "The Act gives agencies detailed instructions for managing their records." *Id.* Section 552a(i) imposes criminal penalties for violations of the Act. *See* 5 U.S.C. § 552a(i). Any officer or agency employee "shall be guilty of a misdemeanor and fined" if that individual (1) willfully discloses protected records, (2) willfully maintains a system of records in violation of the notice

[2] Mr. Anaya does not allege that the DOJ or any other agency disclosed any information that revealed his status as a former CHS. Rather, he appears to argue that the Government should be prosecuting third parties for purportedly revealing such information.

[3] Mr. Anaya also bases his claim on the Fair Information Practice Principles ("FIPPs"), alleging that these principles require "data minimization, use limitation, and security safeguards to prevent harm to individuals." Compl. at 4. The FIPPs, however, originated as recommendations in a report from an advisory committee of the Department of Health, Education, and Welfare. Congress relied on these principles when drafting the Privacy Act. U.S. Dep't of Justice, Off. of Privacy and Civil Liberties, *Overview of the Privacy Act: 2020 Edition*, https://www.justice.gov/opcl/overview-privacy-act-1974-2020-edition/introduction (last visited June 20, 2026). Because the FIPPs are not independent, enforced policies, Mr. Anaya's arguments for relief under the FIPPs are necessarily subsumed into his Privacy Act claims.

requirements under subsection (e)(4), or (3) knowingly and willfully obtains any records under false pretenses. *Id.* This language, however, does not overcome the presumption of prosecutorial discretion on behalf of the Government. That is, it provides no guidelines for an agency to follow in deciding whether to initiate enforcement activity. *See Chaney*, 470 U.S. at 833. Rather, the statute outlines what Congress considers to be a violation of the Act and indicates what punishment is appropriate for such violations. Nor is there any other language within the Act that provides a meaningful standard for judging the agency's abuse of discretion. *See id.* at 830 (holding that "[judicial] review is not to be had if the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion"). Therefore, Mr. Anaya has not rebutted the presumption that enforcement decisions concerning the Privacy Act are committed exclusively to the agency's discretion.[4]

*b. False Claims Act*

The False Claims Act imposes civil liability on "any person who . . . knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval" to the government. 31 U.S.C. § 3729(a)(1)(A). The Act also imposes liability for retaliating against certain individuals who attempt to assist in stopping violations of the Act. *See* 31 U.S.C. § 3730(h). It further provides that the "Attorney General diligently shall investigate a violation under section 3729," and "[i]f the Attorney General finds that a person has violated or is violating section 3729, the Attorney General *may* bring a civil action . . . against the person." *Id.* § 3730(a) (emphasis added).

[4] Moreover, the Privacy Act does not govern the actions of third parties. As noted, *infra* p. 11, Mr. Anaya fails to allege that any government agent or employee unlawfully disclosed his information; rather, he alleges only that third parties have done so.

According to Mr. Anaya, he has "insider information" related to the practice of local Napa County non-profit organizations; he asserts that such organizations are "working in tandem to manipulate funding from grants by abusing the machinery of justice" and "extorting money out of victims by erroneous and malicious acts" such as "stack[ing] the jury." Compl. at 9–10. But such allegations are insufficient as they "tender naked assertions devoid of further factual enhancement," and are thus not entitled to the usual presumption of truth. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In other words, Mr. Anaya has not plausibly alleged that any entity or individual has violated the False Claims Act such that the Government was required to "diligently . . . investigate" any such violations. § 3730(a).

Regardless, the False Claims Act's statutory language does not overcome the presumption that enforcement decisions under the Act are committed to agency discretion. In *Davis v. U.S. Dep't of Health & Hum. Servs.*, another court in this District considered whether the Government's decision about whether to proceed in *qui tam* actions brought under the False Claims Act was an action committed to agency discretion. 968 F. Supp. 2d 176, 183 (D.D.C. 2013), *aff'd*, No. 1:12-CV-01246-JDB, 2014 WL 2178705 (D.C. Cir. Apr. 25, 2014). The plaintiff there had provided the Government with, in the plaintiff's view, indisputable evidence that a third party had committed fraud against the federal government. *Id.* at 182. The plaintiff argued that federal agencies could not lawfully fail to act in *qui tam* actions filed by the plaintiff, either by intervening pursuant to the False Claims Act or taking other appropriate action. *Id.*

Relying on *Chaney*, the court held that the Government's decision not to prosecute or enforce the False Claims Act was not reviewable under the APA. *Id.* The court explained that multiple provisions of the Act afforded the Government prosecutorial discretion. *See id.* at 183 (citing § 3730(a) ("[T]he Attorney General *may* bring a civil action." (emphasis added)); and 31

U.S.C. § 3730(b)(2) ("The Government *may* elect to intervene and proceed with the action." (emphasis added)). Therefore, even if the government had made "an affirmative finding that a False Claims Act violation had occurred or was occurring," the Act "did not require the government to bring a civil action itself." *Id.*; *see also Borzilleri v. Bayer Healthcare Pharms.*, 24 F.4th 32, 43 (1st Cir. 2022) ("It would be odd to have courts micromanage government investigations when [the False Claims Act] also provides that the government ultimately has discretion whether to pursue any false claims that it identifies through those investigations."). Mr. Anaya's mandamus claim premised on the Act thus fails. Mr. Anaya has not plausibly alleged a violation of the Act nor is there a nondiscretionary duty requiring the Government to bring a False Claims Act enforcement action.

*c. 18 U.S.C. § 1513*

Section 1513 "provid[es] for criminal sanctions for retaliation against anyone giving truthful information to law enforcement officers relating to the commission of any federal offense." *Garvey v. Admin Rev. Bd., United State Dep't of Lab.*, 56 F.4th 110, 117 (D.C. Cir. 2022). Section 1513(e) states that violators "shall be fined . . . or imprisoned not more than 10 years." 18 U.S.C. § 1513(e). The statute thus defines prohibited conduct and prescribes the penalties that may be imposed upon conviction. It does not, however, direct the Government to investigate every alleged violation or initiate a prosecution upon receiving a complaint or determining that a violation has occurred. That is, § 1513(e) supplies no meaningful standard against which a court may assess the Government's enforcement decisions and therefore does not overcome the presumption that prosecutorial decisions are committed to agency discretion. *See Chaney*, 470 U.S. at 830–33; *see also Cassaday v. Verizon Inc.*, No. 25-CV-9251 (LTS), 2025 WL 3282299, at *2 (S.D.N.Y. Nov. 25, 2025) (dismissing plaintiff's § 1513 claim because

"prosecutors possess discretionary authority to bring criminal actions"). Because Mr. Anaya has not plausibly alleged that § 1513(e) imposes a clear duty on the Government to investigate or prosecute alleged violations, it cannot support mandamus relief.

* * *

In sum, none of the statutes Mr. Anaya invokes—the Privacy Act, the False Claims Act, or 18 U.S.C. § 1513—provides a meaningful standard that constrains the Government's enforcement discretion in this matter. The presumption of prosecutorial discretion therefore remains unrebutted, and the Government owes Mr. Anaya no clear, nondiscretionary duty to investigate or prosecute the alleged violations contained in the Complaint. Absent such a duty, Mr. Anaya cannot satisfy a threshold requirement for mandamus relief, and his claim must be dismissed.

2. Mr. Anaya's APA Claim

Second, Mr. Anaya's APA claim fails for essentially the same reason as his mandamus claim. He alleges that the Government has unreasonably delayed "addressing CHS safety concerns," Compl. at 2, in violation of § 555(b) of the APA, which requires agencies to conclude matters presented to them "within a reasonable time." 5 U.S.C. § 555(b); *see also* Compl. at 2. The APA authorizes courts to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). But "the governing standards under § 706(1) of the APA and the Mandamus Act are essentially the same." *Agua Caliente Band of Cahuilla Indians v. Mnuchin*, No. 20-cv-01136 (APM), 2020 WL 2331774, at *4 (D.D.C. May 11, 2020) (citation modified); *see also Ramirez v. Blinken*, 594 F. Supp. 3d 76, 90 (D.D.C. 2022) ("The standards for challenging agency inaction under the APA and the Mandamus Act are the same.").

Accordingly, relief under § 706(1) is available only where an agency has failed to take a discrete action that it is legally required to take. *Arabzada v. Donis*, 725 F. Supp. 3d 1, 11 (D.D.C. 2024).

As explained above, neither the Privacy Act, the False Claims Act, nor 18 U.S.C. § 1513 imposes a nondiscretionary duty on the Government to investigate[5] or prosecute the alleged violations in Mr. Anaya's Complaint. Because those statutes do not require the Government to take the discrete enforcement action Mr. Anaya seeks to compel, he cannot state a claim under § 706(1). His APA claim therefore must be dismissed.

3. Mr. Anaya's Claim under the Privacy Act

Finally, to the extent Mr. Anaya asserts an independent claim under the Privacy Act, 5 U.S.C. § 552a, that claim also fails. As noted, "[t]he Privacy Act of 1974 . . . contains a comprehensive and detailed set of requirements for the management of confidential records held by Executive Branch agencies." *F.A.A. v. Cooper*, 566 U.S. 284, 287 (2012). The Act authorizes an aggrieved individual to bring a civil action against an agency for certain violations. *See* 5 U.S.C. § 552a(g)(1)(D). But to state a claim for damages under the Privacy Act, "a plaintiff must plead actual—that is, pecuniary or material—harm." *Wellborn v. IRS*, 218 F. Supp. 3d 64, 82 (D.D.C. 2016) (citation modified). Conclusory allegations are insufficient; rather, a plaintiff must plausibly allege calculable damages resulting from the alleged violation. *Id.*

Mr. Anaya has not done so. He does not allege facts showing that the Government unlawfully disclosed records protected by the Privacy Act, nor does he plausibly allege that he suffered actual, pecuniary harm as a result of any such disclosure. Although he references that he

[5] As to the False Claims Act specifically, the Complaint does not plausibly allege a violation of the Act such that the Government was required to "diligently . . . investigate" that conduct. *See supra* pp. 7–8. And, in any event, "the truth or falsity of [the] allegations do not curtail the discretion of the government to decide how to enforce the False Claims Act." *Davis*, 968 F. Supp. 2d at 183.

has been "bankrupted," he does not allege facts connecting that injury to any purported Privacy Act violation. Compl. at 15. Accordingly, he has failed to state a claim for damages under the Act.

Nor is injunctive relief available. The Privacy Act authorizes injunctive relief only in two limited circumstances: actions to amend agency records and actions to obtain access to agency records. *Am. Fed'n of Lab. & Cong. of Indus. Organizations v. Dep't of Lab.*, 778 F. Supp. 3d 56, 79 (D.D.C. 2025). Mr. Anaya seeks neither form of relief. Accordingly, to the extent the Complaint asserts an independent claim under the Privacy Act, that claim must be dismissed.

**B. Mr. Anaya's Amended Complaint**

Lastly, the Court turns to Mr. Anaya's Amended Complaint. Courts must construe *pro se* filings liberally. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). The Court will therefore interpret Mr. Anaya's filing of the Amended Complaint as any necessary motion seeking leave to amend the Complaint under Federal Rule of Civil Procedure 15.

However, the Court denies Mr. Anaya's motion because he fails to defeat the presumption of prosecutorial discretion. The arguments made by the Government in its original motion to dismiss apply equally here. Mr. Anaya's Amended Complaint suffers from the same fundamental deficiency as his original pleading. Although he has abandoned his APA claim, he continues to seek mandamus relief based on the assertion that several federal criminal statutes—18 U.S.C. §§ 1341, 1343, 1349, 1513(e), 2339B, and 1621—impose a mandatory duty on the Government to investigate and prosecute alleged violations of those statutes. Pl.'s Am. Compl. at 1. The Court has already rejected that theory as to § 1513(e), concluding that its language does not overcome the presumption of prosecutorial discretion in this matter. *See supra* pp. 9–10. The remaining statutes are no different.

Those statutes criminalize certain conduct and impose certain forms of punishment. *See* 18 U.S.C. § 1341 (prohibiting the use of the mail to execute a scheme or artifice to defraud and imposing a term of imprisonment and/or a fine); *id.* § 1343 (prohibiting wire fraud and imposing a term of imprisonment and/or a fine); *id.* § 1349 (prohibiting attempts and conspiracies to commit certain fraud offenses); *id.* § 1621 (prohibiting perjury and imposing a term of imprisonment and/or a fine); *id.* § 2339B (prohibiting knowingly providing material support or resources to a designated foreign terrorist organization and imposing a term of imprisonment and/or a fine). But none contains mandatory language requiring the Government to bring an enforcement action under specified circumstances.[6]

The presumption of prosecutorial discretion thus remains unrebutted. *See Chaney*, 470 U.S. at 835; *Wood v. Herman*, 104 F. Supp. 2d 43, 46–47 (D.D.C. 2000). Therefore, Mr. Anaya's Amended Complaint would be dismissed for lack of subject matter jurisdiction under the Mandamus Act because it, too, does not show that the DOJ owes Mr. Anaya a clear duty to act. The Court thus declines to grant Mr. Anaya's leave to amend.

## V. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss (ECF No. 45) is **GRANTED**; and the Plaintiff's Motion for Leave to Amend (ECF No. 34) is **DENIED**. All other remaining pending motions (ECF Nos. 15–18, 23–24, 28–30, 35, 38, 40, 42, 52–53, 61–62) are **DENIED**

[6] Although § 2339B(e) states that "[t]he Attorney General shall conduct any investigation of a possible violation of this section," § 2339B(e), the Amended Complaint does not plausibly allege any such "possible violation"—that is, allegations that a person or entity "knowingly provide[d] material support or resources to a foreign terrorist organization, or attempt[ed] or conspire[d] to do so," § 2339B(a)(1). *See* Am. Compl. at 9–10 (stating in general, conclusory terms that Napa County officials supported the Sinaloa Cartel); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," and a complaint does not suffice "if it tenders naked assertions devoid of further factual enhancement." (citation modified)).

**AS MOOT**. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated: September 2, 2026

RUDOLPH CONTRERAS
United States District Judge